IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

LAURA LEE GEORGE,

    Plaintiff,

v.

UNITED STATES OF AMERICA,
KENNETH SALAZAR, as Secretary of the
United States Department of the Interior,
LARRY HAWK ECHO, Assistant Secretary-
Indian Affairs,

    Defendants.

No. C 11-06159 RS

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

## I. INTRODUCTION

In this action, plaintiff Laura Lee George attacks the denial, by the Assistant Secretary-Indian Affairs (AS-IA), of her appeal from a determination, by the Superintendent of the Northern California Agency, Bureau of Indian Affairs (BIA), rejecting her application for enrollment in the Hoopa Valley Tribe (HVT) under the Hoopa-Yurok Settlement Act (HYSA), 25 U.S.C. § 1300i, *et seq*. George challenges the AS-IA's decision under the Administrative Procedure Act (APA), 5 U.S.C. § 706. Pending before the Court are the parties' cross-motions for summary judgment. As set forth below, defendants' motion must be granted and plaintiff's must be denied.[1]

## II. BACKGROUND

Although the parties detail, extensively, the historical and legal background of this action, stretching back to the actions of Presidents Lincoln and Grant, for purposes of adjudicating the present cross motions, only the following, undisputed facts require consideration: The HYSA, passed by Congress in 1988, establishes a two-step process for settling claims to timber proceeds against the government among residents of the Hoopa Valley Reservation in Northern California

---

[1] Notably, plaintiff's counsel failed to appear at the hearing on the motions, which provides an additional basis to grant defendants' motion.

(also known as "the Square"), including the Hoopa, Yurok, and Karok Indians. To gain an entitlement to payments under the HYSA, first, an individual must first apply for inclusion on a Settlement Roll listing all "Indians of the Reservation," prepared and published in the Federal Register by the Secretary of the Interior. *See* 25 U.S.C. § 1300i-4(a)(1). Eligibility is determined by reference to a set of criteria known as "Standard B," and developed in Part II of *Short v. United States (Short III)*, No. 102-63, 1982 Cl. Ct. Lexis 02462 (Cl. Ct. Mar. 31, 1982). *See* 25 U.S.C. § 1300i-4(a)(2) (incorporating determinations reached in *Short* litigation).

Second, once listed on the Settlement Roll, an individual must elect between the Hoopa tribal membership option, Yurok tribal membership option, or a lump sum payment. *Id.* § at 1300i-5(b)-(d). Under the HYSA, the Hoopa tribal membership option requires an applicant to "meet any of the enrollment criteria of the Hoopa Valley Tribe set out in the decision of the United States Court of Claims in its March 31, 1982, decision in the Short case (No. 102-63) as 'Schedule A,' 'Schedule B,' 'Schedule C,'" i.e. in *Short III*. *See* 25 U.S.C. § 1300i-5(b). In this litigation, controversy focuses on plaintiff's eligibility under the so-called "Schedule B." In addition, to be eligible, an individual must have maintained a residence on the Hoopa Valley reservation on October 31, 1988, or at any time five years prior to October 31, 1988, or owned an interest in real property on the Hoopa Valley reservation as of October 31, 1988. *Id.*

George is a resident of the Square portion of the Hoopa Valley Indian Reservation. She was born in 1946 and lived on the reservation from 1946 to 1969, and from 1980 to the time of her application to be included on the Settlement Roll, in 1990. She does not know whether she has lineal ancestors born on the reservation. Neither she nor her lineal ancestors own an interest in an allotment on the reservation. By way of background, briefly: the United States' allotment policy, implemented by the General Allotment Act, 25 U.S.C. § 331 (1887) (repealed), promoted individual ownership of Native American lands, but ultimately resulted in depletion of land holdings by Native Americans, eventually leading to the Indian Reorganization Act, 25 U.S.C. §§ 461-479, which afforded tribes some opportunity for self-governance with respect to property ownership matters. In the case of the Hoopas, allotments were distributed from 1922 to 1933, according to the Mortsolf schedule (so named after the agent who prepared it). *Short III*, 1982 U.S. Cl. Ct. LEXIS 2462 at *6-

8. George's relatives are not listed on the Mortsolf schedule, and did not receive an allotment. Indeed, her family did not arrive on the Square until 1946, after distribution of allotments ceased, and her father purchased property on the reservation the following year. George emphasizes her long history of participation in communal activities of the HVT and the fact that many of her relatives are members.[2]

Plaintiff applied for inclusion in the Settlement Roll in 1989, and elected the Hoopa tribal membership option. The Yurok Transition Team notified her it had recommended the Superintendent of the Northern California Agency, BIA, approve her application "under Standard B," which recommendation was apparently accepted. The HTV appealed that decision by the Superintendent to the BIA Area Director, Sacramento Area Office, but lost.[3] That result settled the debate as to whether George qualified as an "Indian of the Reservation" under Standard B. Accordingly, she was listed in the final published Settlement Roll.

On the Roll, George was provisionally listed as having elected the Hoopa tribal under Schedule B, subject to resolution of a second appeal. That challenge, also from the HTV, contended George did not meet the criteria for the Hoopa tribal option under Schedule B. Specifically, the HTV argued the Superintendent had applied the wrong criteria – Standard B, rather than Schedule B – to determine whether George could elect the Hoopa tribal option. In the alternative, the tribe also argued George did not meet the Schedule B criteria. On appeal, the Area Director sided with the tribe, and in a follow-on order, explained George: (1) failed to demonstrate she had applied for Hoopa Valley membership at the same time as those were included in Schedule A, (2) failed to apply for an allotment or select tribal land, and (3) was not considered a member of the Hoopa Yurok Tribe nor permitted to participate in tribal affairs in 1949 or now. Plaintiff appealed, unsuccessfully, to the AS-IA.[4] She requested reconsideration, which was also denied, finalizing the

---

[2] There appears to be some dispute as to whether George has participated in "tribal affairs," which term appears with significance in the definition of Schedule B, but is not otherwise defined in the record.

[3] As defendants note, the administrative record reflects an unfortunate degree of confusion as to the applicability of Standard B, as opposed to Schedule B. As set forth above, plaintiff's eligibility under both criteria was subject to overlapping appeals, although only her satisfaction of Schedule B is at issue in this litigation.

[4] The AS-IA initially denied the appeal under Schedule B on an erroneous understanding of the relevant facts about George's ancestry. Upon reevaluation, at George's request, the AS-IA

Department of Interior's decision in the matter. This lawsuit by plaintiff followed. She requests injunctive relief commanding the Secretary and AS-IA to accept the Superintendent's enrollment of her under the HYSA for benefits.

### III. LEGAL STANDARD

A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also Celotex,* 477 U.S. at 323. A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id.* at 255.

B. Administrative Procedure Act

A "final" agency action is reviewable under § 706 when "there is no other adequate remedy in a court." 5 U.S.C. § 704. Review must be based on the administrative record. *Lands Council v. Powell*, 395 F.3d 1019, 1029-30 (9th Cir. 2004). As relevant, here, § 706 provides: "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] (B) contrary to constitutional right, power, privilege, or immunity…."

---

corrected its factual account, but again concluded George failed to meet the three criteria listed above.

Each of these provisions entails distinct requirements for review. Under § 704(1), a court may only "compel agency action unlawfully withheld or unreasonably delayed" if the action is "legally *required*," or in other words, ministerial. *Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (emphasis in original); *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1019 (9th Cir. 2007). "An act is ministerial only if it is a positive command and so plainly prescribed as to be free from doubt. *United States v. Walker*, 409 F.2d 477, 481 (9th Cir. 1969).

Section 706(2)(A), under which the courts are directed to "hold unlawful and set aside agency action, findings, and conclusions found to be [] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," requires the court to consider whether the agency "articulated a rational connection between the facts found and the choice made." *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*, 273 F.3d 1229, 1236 (9th Cir. 2001) (citing *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1414 (9th Cir. 1990)). A reviewing court may not overturn the action "[a]s long as the agency decision was based on a consideration of relevant factors and there is no clear error of judgment…." *Id.* (citing *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606 (1991). Under the APA's "arbitrary and capricious" standard, deference is due when the decision concerns "factual disputes implicating substantial agency expertise." *Baccarat Fremont Dev., LLC v. U.S. Army Corps of Eng'rs*, 425 F.3d 1150, 1153 (9th Cir. 2005) (citing *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 375-76 (1989)).

Initially, the parties briefing urged review of statutory questions *de novo*.[5] *See Parravano v. Babbitt*, 70 F.3d 539, 544 (9th Cir. 1995) (citing *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 783 (9th Cir. 1995)) ("We review interpretations of statutes and regulations de novo."). In later briefing, defendants took the position that *Chevron* deference applies where, as here, the statute does not specify a standard of review. *Sierra Club v. EPA*, 671 F.3d 955, 961 (9th Cir. 2012). "Generally, courts review agency interpretation of a statute under the two-part *Chevron* test." *Ariz. Cattle*, 273 F.3d at 1236-37 (citing *Chevron, U.S.A. v. Natural Res. Def. Council*, 467

---

[5] In fairness, defendants' position was hedged. Although they conceded review of statutory interpretations is "*de novo*," they also invoked *Chevron*, and insisted the review must "give substantial deference to [the Secretary's] interpretation of the applicable statutes and executive actions that give rise to tribal rights." *Parravano*, 70 F.3d at 544.

U.S. 837 (1984)). *Chevron* applies "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). "A very good indicator of delegation meriting *Chevron* treatment [is] express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." *Id.* at 229. If *Chevron* applies, the first inquiry is "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

Finally, APA claims advanced on the basis of constitutional rights, under § 706(2)(B), require an independent judicial determination of the litigant's rights. *Carpenter v. Mineta*, 432 F.3d 1029, 1032 (9th Cir. 2005) (applying *de novo* review to due process claim under 5 U.S.C. § 706(2)(B)). In other words, it matters not whether the claim is styled under the APA or the Constitution itself.

## IV. DISCUSSION

A. Agency action withheld or delayed

As an initial matter, defendants argue the AS-IA has not withheld agency action, within the meaning of 5 U.S.C. § 706(1). As noted above, that section of the APA assures, "[t]he reviewing court shall (1) compel agency action unlawfully withheld or unreasonably delayed…," but only where the agency action is ministerial in nature. *Norton*, 542 U.S. at 63. Defendants argue the relief George requests, an order giving effect to the Superintendent's determination in favor of enrolling her, is not "legally required," and all that is mandatory, instead, is for the AS-IA to make a determination on the appeal and subsequent request for reconsideration, per 25 C.F.R. Part 62. There is no dispute the AS-IA adjudicated George's appeal and request for reconsideration, and as a consequence, plaintiff's motion, to the extent it sounds under § 706(1), must be denied. Defendants' cross-motion must likewise be granted, and judgment entered in their favor.

B. Arbitrary, capricious, abuse of discretion

Plaintiff claims the AS-IA's determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…." 5 U.S.C. § 706(2)(A). As noted above, the arbitrary and capricious standard is applied to factual findings in fields of particular agency expertise, whereas the agency's statutory interpretations are subject to de novo review. Here, specifically, the parties dispute the requirements of "Schedule B" under the HYSA, a pure question of law. The statute provides a "Hoopa tribal membership option" to:

> Any person on the Settlement Roll, eighteen years or older, who can meet any of the enrollment criteria of the Hoopa Valley Tribe set out in the decision of the United States Court of Claims in its March 31, 1982, decision in the Short case [*Short III*] (No. 102-63) as 'Schedule A,' 'Schedule B,' 'Schedule C' and who –
> (A) maintained a residence on the Hoopa Valley Reservation on October 31, 1988;
> (B) had maintained a residence on the Hoopa Valley Reservation at any time within the five year period prior to October 31, 1988; or
> (C) owns an interest in real property on the Hoopa Valley Reservation on October 31, 1988,
> may elect to be, and, upon such election, shall be entitled to be, enrolled as a full member of the Hoopa Valley Tribe.

25 U.S.C. § 1300i-5(b) (emphasis added). The parties agree Schedule B controls determination of George's election of the Hoopa tribal membership option, as set forth above, but disagree as to what the above reference to *Short III* is intended to invoke, specifically.

The *Short III* opinion was actually directed to defining "Standard B," or in other words, the meaning of "Indians of the Reservation," for purposes of drawing up the Settlement Rolls. *See* 1982 U.S. Cl. Ct. LEXIS 2462 at *28-64 (part II of the opinion, entitled "The Definition of Indians of the Reservation"). As the Court was careful to note, it did not decide "what shall be the membership of the Yurok tribe or of any Indian tribe." *Id.* at *38. To ascertain the parameters of Standard B, however, the trial court followed the Court of Claims' direction that "the 'detailed and carefully drawn' standards used by the Hoopas to determine the membership of the Hoopa Valley Tribe 'provide an adequate basis for determining which of the plaintiffs are Indians of the Reservation." *Id.* at *2-3 (citing Ct. Cl. No. 102-3, slip op. at 14, 661 F.2d 150, 158 (1981)). Accordingly, in order to begin the task of defining "Indians of the Reservation," in part I of the opinion (entitled "The Standards for Membership of the Hoopa Valley Tribe"), the *Short III* court reviewed the

development of Hoopa membership standards over the years. *Id.* at *3 ("The first, all-important matter to be studied, for it will be determinative of the standards to be applied to the plaintiffs, is the membership standards used by the Hoopas."). It is this portion of the opinion which the parties appear to agree is the appropriate point of reference for purposes of the HYSA.

As the opinion reflects, the Hoopa's membership standards were subject to a number of revisions over the years. *See id.* at *4-28. That history need not be in full repeated here, but it is helpful to note that Schedule A, the first official membership roll of the Hoopas, entitled "Official Roll as of October 1, 1949, of Members of the Hoopa Valley Tribe Who May Participate in Tribal Benefits and Moneys," was approved by general election on May 13, 1950 and by the BIA on March 25, 1952. 1982 U.S. Cl. Ct. LEXIS 2462 at *6. As *Short III* explains:

> Not long after the creation of Schedule A, the Council came to believe that some longtime Hoopa residents of the Square were not included in Schedule A, though their or their ancestor's failure to receive an allotment "was through no fault of their own." Allotments on the Square had been discontinued in 1933, before all those eligible had received parcels, [citation omitted], and so it was quite possible that some Hoopa residents of the Square had been eligible, but unsuccessful for lack of land. [¶] Another list was therefore created. It was called Schedule B and entitled "Addition to the Official Members of the Hoopa Valley Tribe Who May Participate in Tribal Benefits and Moneys." Essentially a supplementation of Schedule A, Schedule B contained the names of 18 Indians *who had applied for and been excluded from Schedule A,* but whom the Council considered, notwithstanding their failure to receive an allotment, to be "true Hoopas" and their descendants.

*Id.* at *8 (emphasis added).

In 1959, the Hoopa's governing council, the Hoopa Business Council (HBC) purported to explain the tribe's membership standards. It did so by passing a Resolution which purported "to provide a set of definitions which would 'accurately describe the procedures followed and clarify the intent not heretofore expressed in the membership requirements as set forth in Article 4 of the Constitution and Bylaws of the Hoopa Valley Tribe approved September 4, 1952." *Id.* at *15. It defined Schedule B as "consisting of those living on October 1, 1949, who had filed enrollment applications at the same time as those eventually included on Schedule A, who were eligibile [sic] for, but did not receive allotments, whose residence on the Square 'was not subject to question,' and 'who were generally considered as members of the Hoopa Valley Tribe and permitted to participate in Tribal Affairs, and their descendants living on October 1, 1949.'" *Id.* at *16 (emphasis added).

No. C 11-06159 RS
ORDER

8

Defendants, following the AS-IA, urge Schedule B is defined in *Short III* by reference to the 1959 Resolution, and contend George failed to demonstrate she applied for Hoopa Valley membership at the same time as those who were included in Schedule A.

George disputes this was required and looks, instead, to the opinion's "Recapitulation of Membership Standards," which states: "Schedule B members, elected on case by case bases to remedy what were believed to be inadequacies in Schedule A, were residents of the Square considered part of the Tribe, who had failed to get an allotment through no fault of their own, and their descendants. Schedules A and B were limited to persons living on October 1, 1949." *Id.* at * 26-27. George also resorts to other, later judicial opinions from the Court of Claims which she reads as adopting the foregoing definition of Schedule B. For example, a later decision of the Court of Appeals for the Federal Circuit, *Short v. United States, et al. (Short IV)*, 719 F.2d 1133, 1139 n.12 (Fed. Cir. 1983), restates, "[i]n paraphrased summary," *Short III*'s definition of Schedule B as follows: "Indians living as of October 1, 1949, whose residence within the Square was not subject to question, who never received allotments but were generally considered as members of the Hoopa Valley Tribe and permitted to participate in tribal affairs, and their descendants living on October 1, 1949."

Defendants emphasize this was intended by the Court merely as "paraphrased summary," not as a definitive articulation of the meaning of Schedule B under the HYSA. They insist *Short III* is the appropriate source of the term's definition, although they believe the appropriate frame of reference, is more precisely, the *tribe's* standards, as reflected in the opinion, rather than some judicial construction of those standards. George denies the analysis properly focuses on the standards established by the tribe, and focuses solely on the *Short III* opinion. She notes that the HYSA, 25 U.S.C. § 1300i-5(b)(2) states: "Notwithstanding any provision of the constitution, ordinances or resolutions of the Hoopa Valley Tribe to the contrary, the Secretary shall cause any entitled person electing to be enrolled as a member of the Hoopa Valley Tribe to be so enrolled and such person shall thereafter be entitled to the same rights, benefits, and privileges as any other member of such tribe." George therefore infers that the 1959 Resolution is not pertinent.

Ultimately, resolution of this question turns on the standard of review. Were no deference

due to the agency's view of the matter, George might have a much stronger case. Her understanding of the HYSA cannot be rejected out of hand. As defendants point out, however, the challenged adjudication by the AS-IA occurred pursuant to 25 C.F.R. Part 62 ("Enrollment Appeals"). The fact that the agency was authorized to make formally adjudicate such appeals is a strong indication that its statutory interpretations are entitled to *Chevron* deference. *Mead Corp.*, 533 U.S. at 229. The HYSA does not indicate otherwise. While *Parravano* suggests, "we review questions of statutory interpretation de novo, in reviewing the Secretary's actions," it goes on to note, "we give substantial deference to his interpretation of the applicable statutes and executive actions that give rise to tribal rights." 70 F.3d at 544 (citing *Udall v. Tallman*, 380 U.S. 1, 16 (1965)). *Parravano* concerns a different statutory regime than the one at issue here, and to the extent it relies on *Udall*, that case substantially predates *Chevron*. As defendants note, Accordingly, under the circumstances, *Chevron* must apply.

Applying *Chevron*, the first question is "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. Here, the meaning of the contested language in the HYSA is ambiguous. It requires applicants must "meet any of the enrollment criteria of the Hoopa Valley Tribe set out in the decision of the United States Court of Claims in its March 31, 1982, decision in the Short case (No. 102-63) as 'Schedule A,' 'Schedule B,' 'Schedule C.'" 25 U.S.C. § 1300i-5(b). As the foregoing discussion indicates, there is certainly room for reasonable debate about the specific formulation of the Hoopa's membership standards, as discussed in *Short III*, that this language incorporates into the HYSA. Moreover, the statutory language alone does not resolve the issue.

Accordingly, the analysis must proceed to *Chevron*'s second step. That is, "[i]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n.11. Here, it cannot be said the

AS-IA's understanding of the HYSA is impermissible or unreasonable. Notably, plaintiff and defendants agree on all of the applicable requirements under Schedule B, except for the prerequisite, set forth in the 1959 Resolution and noted in *Short III*, that successful applicants must have "filed enrollment applications at the same time as those eventually included on Schedule A." 1982 U.S. Cl. Ct. LEXIS 2462 at *16. Because that requirement is reflected in *Short III*, and is constituent of the Hoopa's membership standards, as they have evolved over the years, the AS-IA's construction is certainly reasonable, and for that reason, must be upheld.

Having come to that conclusion, the only question remaining is whether or not George or her relatives applied for enrollment at the same time those members listed under Schedule A did. There is no dispute: as a matter of fact, neither plaintiff nor her relatives[6] applied for membership under Schedule A. As a consequence, it is quite clear she is not eligible to elect the Hoopa tribal membership option under the HYSA.

Although that finding is dispositive of this case, it is at least worth noting in passing that were plaintiff's view of the statute to prevail, ultimately, the result would be the same. Both sides agree that to meet Schedule B, a successful applicant must, among other things, have been eligible to receive an allotment, generally be considered a member of the tribe, and be permitted to participate in tribal affairs (or descended from such an individual). Here, although plaintiff contests her claimed failure to satisfy these latter requirements, she has neglected to provide any evidentiary support whatsoever in support of her position. There are, quite literally, no relevant citations to the factual record appearing in her brief. Instead, it is the government that has documented the basis for the AS-IA's determination that George both (1) failed to apply for an allotment or select tribal land, and (2) was never considered a member of the Hoopa Yurok Tribe nor permitted to participate in tribal affairs. *See* Defs.' Opp'n at 24:3-25:2. Under Rule 56, George has therefore failed to raise a genuine issue of material fact sufficient to sustain her own motion or resist the defendants' motion. In the absence of a factual issue for consideration, further, it cannot be said the AS-IA's application

---

[6] Although George argues the AS-IA failed to consider whether any of her relatives meet Schedule B, there are no references to the record to suggest that issue that was even properly presented for consideration. Letters from the AS-IA omitting mention of the issue do not prove it was properly raised to the AS-IA by plaintiff.

1  of Schedule B's requirements was "arbitrary, capricious, an abuse of discretion, or otherwise not in
2  accordance with law" under the APA.  5 U.S.C. § 706(2)(A).  Thus, even if plaintiff prevailed in her
3  understanding of the HYSA, Rule 56 and § 706(2)(A) would require entry of judgment in
4  defendants' favor.

5  <u>C. Constitutional claims</u>

6  Plaintiff's complaint purports to assert claims under the Supremacy Clause and the Fifth
7  Amendment.  Compl. ¶ 2(a)-(b).  As defendants note, the nature of these claim is not at all clear, and
8  there is no factual or legal basis disclosed to support them.  In fact, George's moving papers do not
9  make any reference to these claims, although defendants' opposition brief requests judgment on
10 them and attacks them as meritless.  Plaintiff's failure to respond may be interpreted as non-
11 opposition.  Accordingly, judgment must be entered in defendants' favor.

## V. CONCLUSION

13 For the reasons explained above, defendants' motion is granted and plaintiff's must be
14 denied.

16 IT IS SO ORDERED.

18 Dated: 10/4/12

   _____
19 RICHARD SEEBORG
   UNITED STATES DISTRICT JUDGE